# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-1408
Filed February 11, 2026

_____

**In the Interest of B.M., Minor Child,**

**B.M. Sr., Father,**
Appellant

**J.S., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County,
The Honorable Kimberly Ayotte, Judge.

_____

**AFFIRMED ON BOTH APPEALS**

_____

B.M. Sr., Waterloo, self-represented appellant father.

Lynn Vogan, Des Moines, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant
Attorney General, attorneys for appellee State.

Teresa Pope of Pope Law PLLC, Des Moines, attorney and
guardian ad litem for minor child.

_____

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

A police raid in the summer of 2023 showed that a seven-year-old son and his siblings were living in a home with marijuana, cocaine, and a loaded gun all within arm's reach. The son was removed from his mother's custody and briefly placed with his father, although he was quickly removed from his father's custody after the father refused to cooperate with the Iowa Department of Health and Human Services ("HHS"). After a year of no progress toward reunification—the mother was in federal custody and the father never complied with HHS's requirements or recommendations—the State petitioned to terminate both parents' parental rights. And several months of hearings later, the juvenile court agreed.

Both parents now appeal, taking different approaches. The mother's appeal is straightforward—she believes she has made enough progress while incarcerated that termination is not in the son's best interest. The father's appeal is more complicated—he has filed many motions seeking to strip us of jurisdiction and generally assails the legitimacy of both the child-in-need-of-assistance and termination proceedings.

On our de novo review, we affirm both terminations. We will not delay permanency for the son while the mother travels the long road of imprisonment and recovery. As for the father, we have carefully reviewed the record and find no jurisdictional, statutory, or evidentiary errors that require reversal. And we agree that the State proved that termination was warranted and in the son's best interest. As a result, we affirm the juvenile court and deny all the father's pending motions.

## I.     Factual Background and Proceedings

A seven-year-old son—along with three of his siblings who are not the focus of this case—was removed from his mother's[1] custody in July 2023 after a police raid discovered marijuana, baggies of cocaine, and a loaded gun in her home within easy reach of the children. He was later adjudicated in need of assistance.

The mother was promptly arrested and has remained in custody ever since, eventually pleading guilty to the federal offenses of straw purchasing of firearms and unlawful user in possession of a firearm. *See* 18 U.S.C. §§ 932(b), 922(g)(3) (2023). As for the father, HHS briefly placed the son in his custody. But that was short lived—the father refused to cooperate with HHS workers and tried to move the son to Colorado. So the son was removed from the father's custody and placed with his half-sister's parents, and then later in the care of fictive kin.

For the next year, the father largely rebuffed HHS services, refusing to obtain psychological evaluations, submit drug screens, or receive mental-health treatment. He contested many hearings and was often disruptive or noncompliant while attending. And he flooded the docket with filings and motions.

With no progress toward reunification, the State moved to terminate the mother's and father's parental rights to the son in October 2024. The case then stalled as the court waded through the father's slew of filings, delaying the matter until March 2025. And even then, the substantive

---

[1] We avoid using the parties' names to respect their privacy because this opinion— unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

termination hearing spanned roughly five months—the parties convened in March, April, June, and July, and filed written closing arguments in August.

The juvenile court ultimately terminated both parents' rights to the son under paragraph "f" of Iowa Code section 232.116(1) (2024). The court reasoned that the mother's imprisonment prevented an immediate return to custody and the father's noncooperation precluded any finding that he could provide the son with a safe home. Indeed, the father never provided his home address; "has not demonstrated the ability to maintain a stable home or maintain employment"; and was "unwilling to work with HHS, engage in services, or follow court expectations."

Both parents now appeal, and we review all issues de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

## II.    Mother's Appeal

To permanently sever the parent–child relationship, the State must prove two elements by clear and convincing evidence: (1) one or more statutory grounds for termination, and (2) termination is in the child's best interest. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Here, the mother only contests the second element, so we focus our analysis there. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother disputes that terminating her rights to the son is in his best interest, pointing to her participation in services while incarcerated and her successful telephonic visits with the son. But like the juvenile court, we agree that termination is best for the son. The mother was sentenced to fifty-four months of prison. While incarceration alone does not justify termination here, incarcerated parents are not immune from the consequences of choosing to "engage in crimes, resulting in [their] convictions and

4

incarceration, at the expense of building a relationship with" their children. *In re C.A.V.*, 787 N.W.2d 96, 101–02 (Iowa Ct. App. 2010). Nor do we make children wait for years in the hope that a parent will correct course. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). And beyond her prolonged separation from the son, the mother's underlying misconduct—buying guns for her teenage son, keeping loose marijuana and cocaine in the home, and having a loaded gun in arm's reach of the son—shows she has a long road to recovery. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (finding termination was in child's best interest when the incarcerated mother's "journey is likely a long one and it is far from complete"). With no path to reunification on the near horizon, termination best serves the son.

We reject the mother's request for a guardianship for the same reason—the son deserves permanency now. *See In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017) ("[A] guardianship is not a legally preferable alternative to termination."). What's more, the grandparents do not agree to be guardians, believing the son needs a stable home and that a guardianship would ultimately confuse and disrupt him. *See In re W.L.*, No. 20-0880, 2020 WL 5229199, at *3 (Iowa Ct. App. Sept. 2, 2020) (declining guardianship as an alternative to termination for eight-year-old son who had been in foster care for over two years and suggested placement was not willing to serve as guardian). We thus affirm termination of the mother's parental rights.

### III.  Father's Appeal

Like he did below, the father has filed a slew of motions in this appeal attacking the child-in-need-of-assistance and termination proceedings. And his petition on appeal similarly echoes his frustrations with the underlying

proceedings, while also briefly addressing the termination standards. The father is clearly frustrated by this action, feels proper procedures were not followed, and believes that justice requires returning the son to his custody. We appreciate the father's concerns—the parent–child relationship is "perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court." *In re A.B.*, 957 N.W.2d 280, 291 (Iowa 2021) (cleaned up). We never sever that bond lightly or contrary to our statutory scheme. So we will briefly try to respond to the father's arguments in his petition and motions, with the aim of clarifying the procedures followed and assuring overall compliance with our child-welfare laws.

First, both we and the juvenile court have jurisdiction over this case. The father believes that HHS's failure to identify him in its initial ex parte removal application, and its purported failure to timely serve him, stripped the court of jurisdiction over *him* for all future proceedings. Not so. Our legislature granted the juvenile court jurisdiction over all *cases* involving children in need of assistance, including those that involve ex parte removal orders. *See* Iowa Code § 232.78. The juvenile court similarly has "exclusive jurisdiction over proceedings under [chapter 232] to terminate a parent-child relationship and *all parental rights with respect to a child*." *Id.* § 232.109 (emphasis added). And when a juvenile court terminates a parent's rights, we have appellate jurisdiction to review that order. *See id.* § 602.5103(2)(a); Iowa R. App. P. 6.205(1). So the juvenile court at all times acted within its jurisdiction, as do we when resolving this appeal. And the record here shows the State filed an amended child-in-need-of-assistance petition naming the father about ten days after the initial ex parte removal application, properly bringing the father into that case and before the juvenile court.

Second, we cannot resolve the father's challenges to several aspects of the child-in-need-of-assistance case. Our legislature instructed that termination actions and child-in-need-of-assistance actions proceed as separate cases. *See* Iowa Code §§ 232.87, 232.11. The child-in-need-of-assistance case has concluded, and this is an appeal from the separate termination case. This two-track scheme does not leave the father without a remedy, as he already appealed most of these issues during the child-in-need-of-assistance case. *See In re B.M.*, No. 24-0252, 2024 WL 3518296, at *1 (Iowa Ct. App. July 24, 2024). In that prior appeal, we "agree[d] with the juvenile court's actions, including its decision to adjudicate B.M. as [in need of assistance], remove the child from the parents' custody, and order the father to participate in paternity testing." *Id.* So the father has been heard, and this court has already confirmed that the proper procedures were followed during the child-in-need-of-assistance case.

Third, we see no reversible error in any failure to electronically file the son's birth records during the termination case or any erroneous labeling of the father as "incarcerated." The father believes the son's birth records would confirm he is the son's biological father and the exhibit should have been accepted, but the juvenile court presumed that fact when it terminated his parental rights. He also argues that he was improperly listed as "incarcerated" on some filings, but it was apparent to the juvenile court and all parties involved that the father was not incarcerated. Thus, the father's claimed electronic-filing or labeling errors—to the extent any existed—did not impact the juvenile court's termination decision or prejudice the father.

Finally, the State proved that the child could not be returned to the father's custody at the time of the hearing. The father believes the initial ex parte removal order was void, rendering the whole period the son was out of

7

his custody similarly void. Again, not so. The juvenile court's dispositional order adjudicated the son in need of assistance, and the son was validly removed from his father's custody. Any possible errors in the ex parte order—and to be clear, we find none—were cured by the later dispositional order. *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). And the father was given many chances to demonstrate he could provide a safe and stable home for the son. Instead, he chose to refuse most of HHS's recommendations. The juvenile court thus correctly held that the son could not be returned and termination was appropriate under paragraph "f" of Iowa Code section 232.116(1).

We have scrutinized this case and its thousands of pages of filings. Conducting a thorough de novo review, we reach the same conclusion as the juvenile court: the State proved termination was warranted and in the son's best interest. We thus affirm the juvenile court and deny all the father's pending motions.

**AFFIRMED ON BOTH APPEALS.**